Theresa Prill, Executrix of Estate of August Prill, Deceased, Appellee, v. City of Chicago, Appellant.

Gen. No. 41,558.

Opinion filed December 30, 1942.

BARNET HODES, Corporation Counsel, for appellant; J. HERZL SEGAL and SYDNEY R. DREBIN, Assistant Corporation Counsel, of counsel.

FINN & MILLER, of Chicago, for appellee; ROBERT S. COOK, of Chicago, of counsel.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This is an action brought against the City of Chicago by plaintiff, Theresa Prill, as executrix of the estate of August Prill, deceased, for damages for his death which it is alleged resulted from injuries sustained when he fell into an excavation in Clybourn avenue near Southport avenue. The case was tried before the court and a jury. A verdict was returned by the jury in favor of plaintiff and against the defendant for $1,500 damages. Defendant's motion for a directed verdict was denied and after overruling its motion for a new trial the trial court entered judgment on the verdict against the City of Chicago. Defendant appeals.

Plaintiff's complaint is in the form usually employed in an action for wrongful death. The gist of the complaint is stated in the first additional count thereof as follows:

"That said defendant, on the day aforesaid and for a long time prior thereto, carelessly and negligently, permitted and allowed the public highway at the place aforesaid, to be and remain in a dangerous and unsafe condition, and caused, permitted and allowed a certain deep hole or excavation to be and remain in said highway at the place aforesaid.

"That said defendant had notice of the dangerous and unsafe condition of said public highway at the place aforesaid or by the exercise of ordinary care should have had notice.

"That on the day aforesaid, plaintiff's intestate was then and there passing upon and across said public highway at the place aforesaid, and was both before and at the time of the injury in the exercise of ordinary care for his own safety.

"That by reason of the carelessness and negligence of said defendant, as aforesaid, plaintiff's intestate then and there tripped, stumbled, fell and was, precipitated into said hole or excavation, and thereby as a proximate result of the carelessness and negligence of

said defendant, as aforesaid, plaintiff's intestate received injuries which resulted in his death on the 15th day of October, 1936.''

Defendant's answer denied the material allegations of the complaint. No point is raised on the pleadings.

Numerous grounds are urged for the reversal of the judgment but we deem it necessary to consider only one of such grounds and that is whether the decedent was guilty of contributory negligence as a matter of law.

On October 8, 1936 at about 7:20 a. m. August Prill, the decedent, alighted from a southeasterly bound Clybourn avenue street car which had stopped at the intersection of Clybourn and Southport avenues to discharge passengers. Southport avenue runs north and south and Clybourn avenue runs southeast and northwest and intersects Southport avenue at an angle of about 45 degrees. The west curb of Southport avenue and the northeasterly curb of Clybourn avenue meet in a triangular point. Clybourn avenue was being widened and that portion of the street between the southwesterly rail of the street car tracks and the southwest curb was closed to traffic. The balance of the street was open to vehicular traffic as well as to pedestrian travel. The city had dug a trench on the northeasterly side of Clybourn between the northeasterly curb and the northeasterly rail of the street car tracks for the purpose of installing traffic signals, fire alarms and electric lights. This trench was about 9 feet long from the curb to the street car rail, from 2 to 2½ feet wide and from 2 to 4 feet deep. Other than this trench there were no excavations nor were there any repairs being made on the northeasterly side of Clybourn avenue. The aforesaid trench was dug on Clybourn avenue from 17 to 25 feet northwest of the triangular point heretofore referred to. The decedent passed around the rear end of the standing southeasterly bound street car from which he had alighted

and continued to walk in an easterly direction across the northwesterly bound Clybourn avenue street car track. When he was about midway between the rails of the northwesterly bound track he found himself in a perilous situation. The standing street car on the southeasterly bound track, which was about 35 feet long, was to the southwest of him, an automobile was approaching him from the southeast on the northwesterly bound street car track and another automobile was rapidly approaching him from the northwest. When this latter automobile was a short distance to the northwest of the street car standing on the southeasterly bound track, it turned to the left into the northwest bound track on the wrong side of the street to pass said standing street car. When Prill found himself hemmed in by the street car and the two automobiles as indicated, the only way of escape open to him was to the east. After having been last seen between the rails of the northwesterly bound street car track he was shortly thereafter found attempting to get out of the aforementioned trench. There was no evidence as to how he got into the trench. It does not appear whether, knowing the trench was there, he jumped, ran or walked into it or whether, having no knowledge concerning the trench, he fell into it in trying to get out of the path of the approaching automobiles. The dirt from the excavation had been thrown into a pile to the southeast side of the trench and at the time of the accident there was a barricade a short distance southeast of such dirt. In order to avoid being struck by the automobile approaching from the northwest the driver of the automobile approaching from the southeast hurriedly turned his car out of the street car track toward the northeast curb. He did not succeed in stopping his automobile until after it had crashed through the aforesaid barricade and ran into and upon the pile of dirt. When he got out of his car he saw decedent attempting to get out

of the trench and he assisted him out and took him to the hospital. The decedent died about a week later as a result of the injuries he received by reason of his landing in the trench.

The only two witnesses to any part of the occurrence were Ralph Klingenmaier and Sam Guzzo and they testified in plaintiff's behalf. As to that portion of the occurrence which he had seen Klingenmaier testified in substance that he was driving his Essex car northwest on Clybourn avenue and that Sam Guzzo was sitting beside him on the front seat; that they were going to work on a W. P. A. project at "Bryn Mawr and Sixty-fourth"; that "it was not real foggy, I would not say real fog, it was rather dark"; that he stopped his automobile at the southeast corner of Clybourn avenue and Southport avenue, before crossing Southport avenue, to wait for a pedestrian to pass; that the windshield of his car was clean and his eyesight was good; that he could see for quite a distance, at least a block or a block and a half and that there were no obstructions in front of him; that as he started his car across the intersection of Clybourn avenue and Southport avenue he saw "a man come out and off the street car . . . I seen a man come out . . . behind the street car . . . I seen him run across the street, then all of a sudden I saw another car coming up . . . coming right straight at him"; that this automobile was coming from the northwest on Clybourn avenue on the wrong side of the street and at a high rate of speed; that said automobile was about 25 feet behind or to the northwest of the man as he ran across the street; that the street car from which the decedent had alighted was standing still "when this other automobile driving at the rate of 30 or 35 miles an hour" passed said street car on the wrong side of the street; that just at that time Prill was between his (Klingenmaier's) car and the other car and disappeared from his (Klingenmaier's) vision; that

he did not see Prill again until he got out of his car; that at that time Prill was partly out of the excavation; that the other automobile coming from the northwest on the wrong side of the street forced him (Klingenmaier) to turn his car toward the curb; that his car crashed through the barricade and ran into the pile of dirt on the southeast side of the excavation; and that when the other automobile passed him, it was within 12 inches of his car and it continued on to the southeast.

At the time of the trial Sam Guzzo was ill and unable to appear in court to testify. His testimony was taken by deposition and read to the jury. It substantially corroborated that of Klingenmaier.

There is no evidence in the record bearing upon Prill's conduct at and immediately prior to the time of his injury except the testimony of Klingenmaier and Guzzo and there is no charge in the complaint that defendant was guilty of wilful or wanton conduct.

It was incumbent upon plaintiff to show affirmatively that at and immediately prior to the time of his accident Prill was in the exercise of reasonable care for his own safety. In *Illinois Cent. R. Co. v. Oswald*, 338 Ill. 270, in approving this rule, the court said at pp. 274 and 275:

"In the absence of wilful or wanton injury on the part of the defendant the plaintiff cannot recover in an action for personal injuries unless it appears he was in the exercise of ordinary care for his safety, and in such case it is the duty of the court to direct a verdict for the defendant if there is no evidence tending to show affirmatively that the plaintiff was exercising due care or to raise a reasonable inference of such care. A party has no right to knowingly expose himself to danger and then recover damages for an injury which he might have avoided by the use of reasonable precaution. . . . When the evidence is all considered, together with all the reasonable inferences to be drawn therefrom, in its aspect most favorable to defendant in

error, we are constrained to say that she failed to prove one of the three essential elements of her case,— *i.e.*, that she was in the exercise of ordinary care for her own safety. The court should have instructed the jury to find the defendant not guilty.''

The question of contributory negligence in an action brought for damages for personal injuries is separate and distinct from the question as to whether the defendant was guilty of negligence and it has been repeatedly held that notwithstanding the negligence of the defendant, if such is shown, contributory negligence bars recovery. In *Reiter v. City of Chicago,* 303 Ill. App. 60 (Abst.) this court held:

'' . . . Even though the city may have been negligent in allowing the alley to remain in a state of disrepair for so long a time, it should still not be held liable under a clear case showing that plaintiff was not in the exercise of due care for his own safety. The courts of this State have repeatedly held that in the absence of wilful and wanton injury on the part of defendant, the plaintiff cannot recover for personal injuries sustained in an accident unless it appears that he was in the exercise of ordinary care for his own safety. *Illinois Cent. R. Co. v. Oswald,* 338 Ill. 270; *Wilson v. Illinois Cent. R. Co.,* 210 Ill. 603; *Pollard v. Broadway Cent. Hotel Corp.,* 269 Ill. App. 77.''

The material facts as to the manner in which Prill's accident and injuries occurred are not in dispute. According to the testimony of plaintiff's witnesses, Klingenmaier and Guzzo, they saw the decedent alight from the southeast bound Clybourn avenue street car, pass around the rear end thereof and run or walk toward the east across the space between the two tracks and continue on until he was between the rails of the northwest bound track. Their attention was then diverted from decedent by the rapidly approaching southeast bound automobile and their own necessity of getting out of its path. Neither Klingenmaier nor Guzzo testified that Prill looked either to the northwest or to the

southeast before, at the time or after he emerged from behind the standing street car nor are there any facts and circumstances in evidence from which it can be reasonably inferred that he did so look either before he had reached the northeast line of said street car, at the time he reached that line or after he had passed said line. On the contrary the only reasonable inference that can be drawn from all the facts and circumstances in evidence is that he did not look when he reached the northwesterly line of the standing street car nor at any time until he found himself in a position of danger between the rails of the northwest bound street car track. Had he looked when he should have looked he must necessarily have seen Klingenmaier's car traveling in a northwesterly direction in or partly in the northwest bound street car track and the other automobile traveling in a southeasterly direction also on the northwest bound track on the wrong side of the street or turning into said track. If Prill had looked when he reached the northeast line of the standing street car he could have readily seen from the distances these automobiles were from him and the rate of speed at which they were traveling, that he was likely to be struck by one or the other of them if he proceeded across the northwest bound track. There is not only no evidence in the record from which it could be reasonably inferred that Prill was in the exercise of due care from the time that he emerged from behind the standing street car until he was between the rails of the northwest bound track but the testimony of Klingenmaier and Guzzo actually shows that the decedent was guilty of contributory negligence.

Since there is no evidence in this case nor facts or circumstances, considered in their aspect most favorable to plaintiff, from which it could be reasonably inferred that Prill exercised due care for his own safety when he walked from behind and went beyond the standing street car without looking to ascertain whether there was traffic approaching on the adjoining

track, it must be held as a matter of law that he was guilty of negligent conduct which directly contributed to the injuries which resulted in his death.

In *Myhre v. Chicago City Ry. Co.*, 216 Ill. App. 128, the plaintiff alighted from the rear platform of a street car, and, while that car remained standing, she walked behind it onto the adjoining track, where she was struck by a street car coming from the opposite direction. The plaintiff therein testified that she did not see the street car until just at the instant it struck her. In holding that the plaintiff in that case was guilty of contributory negligence the court stated at pp. 131 and 132:

"The purpose of looking, as an act of caution, is to determine what one shall safely do next; ordinarily this will be to move or to stand still; hence the looking must be done when and where one can act safely with reference to any danger observed, otherwise the act of looking is minus the element of caution. If plaintiff looked only the instant she was struck, she failed to look with the care and caution necessary for her safety, so that she must be considered as having moved towards the tracks and within the danger zone without looking. . . . She must therefore be held to have walked into the line of danger without using her sight, which if used would have saved her. Was such conduct under such circumstances the exercise of ordinary and reasonable care and caution for one's own safety? We hold that it was not, but was negligent conduct on plaintiff's part which directly contributed to the accident in question."

In *Ohnesorge v. Chicago City Ry. Co.*, 177 Ill. App. 134, the question of a pedestrian passing behind and beyond a standing street car onto an adjoining track without looking was again considered. In that case the court said at pp. 136 and 137:

"The question then is, was the father in this case guilty of negligence in leading the child around behind the south-bound car when he knew of the approach of

the north-bound car, without looking for that car before leading the child upon the track in front of it? In our opinion, a person passing behind one car and in front of another at a street crossing owes the duty to look before stepping on a parallel track, and that failure to do so is clearly negligence. *Burke v. Chicago City Ry. Co.,* 153 Ill. App. 388; *Von Holland v. Chicago City Ry. Co.,* 148 Ill. App. 320; *Brown v. Chicago City Ry. Co.,* 155 Ill. App. 434. These decisions are in harmony with the decisions of the leading States of this country. It is useless for a pedestrian to look when a standing car is obstructing his vision. It is often too late to look after the pedestrian has stepped upon the parallel track because the approaching car may be so near at hand as to make escape impossible. The time when ordinary prudence requires a pedestrian to look is when he closely approaches and comes to the farther line of the standing car. *Hornstein v. United R. Co. of St. Louis,* 195 Mo. 440. If by the exercise of ordinary care on Ohnesorge's part, he could have seen the approach of appellant's north-bound car as he emerged from behind the south-bound car and approached the track on which the car was running, the law made it his duty to see the car under the facts disclosed by his own testimony, and if he failed in that duty, as we think he did, his failure would bar a recovery in this case. *Chicago & N. W. Ry. Co. v. Dunleavy,* 129 Ill. 132.''

(Other cases to the same effect are *Devine v. Chicago City Ry. Co.,* 203 Ill. App. 410; *von Holland v. Chicago City Ry. Co.,* 148 Ill. App. 320; *Brown v. Chicago City Ry. Co.,* 155 Ill. App. 434; *Gibb v. Hardwick,* 241 Mass. 546, 135 N. E. 868; *MacDiarmid Candy Co. v. Schwartz,* 11 Ohio App. 303; *Di Stephano v. Smith* (R. I.), 102 Atl. 817; *Gottstein v. Daly,* 166 Wash. 582, 7 P. (2d) 610; *Cohen v. Eastern Stages,* 166 Conn. 210, 164 Atl. 383; *Letts v. Cole,* 310 Pa. 509, 165 Atl. 847; and *Jones v. Florios,* 248 Mich. 153, 226 N. W. 852.)

While it is true that Prill was not struck by either of the automobiles which were approaching him from opposite directions when he was between the rails of the northwest bound track, it is also true that he would not have been in such a perilous situation except for his own negligence.

It is idle to urge that the principles of law applicable to sudden emergencies can be invoked against the defendant. The excavation made in the street by the City of Chicago, whether it was or was not properly safeguarded, had nothing to do with the creation of the dangerous emergency with which Prill found himself confronted. That emergency resulted from Prill's negligence in conjunction with the negligence of the driver of the southeast bound automobile or possibly of the drivers of both automobiles. Even though the City of Chicago had actively participated in causing the emergency, which it did not, still plaintiff would not be entitled to recover from it, since there was a complete failure of proof that Prill was without fault on his part.

As already shown the decedent failed to exercise any care for his own safety up to the time he was last seen between the rails of the northwest bound track and it certainly cannot be said that there was any evidence tending to show that he was in the exercise of due care for his own safety from the time he was last seen until he landed in the trench. There is not a particle of evidence as to what his conduct was from the time he was last seen between the rails of the northwest bound track and the time he was next seen trying to get out of the trench and it was incumbent upon plaintiff to prove that the decedent was in the exercise of due care for his own safety not only at the precise time of his accident but immediately prior thereto. It was only a matter of seconds from the time Prill emerged from behind the standing street car without looking to the northwest or the southeast and the time he landed in

the trench. His own negligence which directly contributed to the creation of the emergency which placed him in peril cannot be disassociated from his attempt to escape from such peril. As has been shown his only means of escape was to the east and the trench was only a matter of a few feet from the point where he was last seen standing between the rails of the northwest bound street car track. It does not appear just where Prill entered the trench, whether it was from the northwest, southeast or southwest side thereof but that is immaterial, since his landing in the trench was a direct result of his own negligent conduct which contributed to the creation of the dangerous emergency from which he sought to extricate himself.

Even though it be assumed that defendant was negligent in failing to provide proper barricades and warning signals around the trench and that Prill would not have suffered his fatal injuries if such barricades and warning signals had been provided still plaintiff would be barred from recovery because she failed to prove that the decedent was free from contributory negligence at and immediately prior to his accident. Prill's freedom from contributory negligence was one of the essential elements of plaintiff's case and in the absence of affirmative proof of this element this action cannot be maintained.

While ordinarily the question of contributory negligence is one of fact for a jury to determine, where as here, there is no evidence in the record that Prill exercised any care for his own safety immediately prior to and at the time of his injury, it becomes a question of law.

We are impelled to hold that Prill was guilty of contributory negligence as a matter of law and that a verdict for the defendant should have been directed.

We have considered the other points urged but in the view we take of this case we deem further discussion unnecessary.

For the reasons stated herein the judgment of the circuit court of Cook county is reversed, and since it would serve no useful purpose to remand this cause, judgment is entered here in favor of defendant and against plaintiff.

*Judgment reversed and judgment here.*

FRIEND and SCANLAN, JJ., concur.